FOUNTAIN RICE *v.* R. H. JOHNSON ET AL.

**Fraudulent Conveyance.**

The husband being insolvent, bought a house and lot, and failing to pay for same, the wife's father paid the purchase money and had the conveyance made to her. Held, that there was neither actual or constructive fraud in the conveyance.

**Improvement on Wife's Property.**

The husband may put such improvements on his wife's property as will make it reasonably fit for occupancy by himself and family without such improvements being subject to his debts.

APPEAL FROM MADISON CIRCUIT COURT.

, December 7, 1867.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Appellant at March term, 1862, of the Madison Circuit Court recovered a judgment for $1,400, with interest from February 13, 1860, and costs, against Wm. Williams and R. H. Johnson. He sued out execution thereon in April and had it returned by the sheriff at his own order without levy, he subsequently had some five other executions and had the same return, when another execution was issued August 14, 1863, which was subsequently returned "no property found."

It is agreed that Johnson was Williams' surety in this debt, and it appears that something over eight hundred dollars have been made out of Williams.

March 8, 1860, R. L. Brady bought of W. J. Walker a lot and house in Richmond at $1,500, to be paid January 1, 1864, and in the mean time to pay annual rents at the rate of $150 per year.

January 1, 1861, R. H. Johnson bought this property of Brady and an endorsement is made on Walker's title bond signed by both Brady & Johnson stating that Johnson is to pay all the remainder of the rents and principal when due , and have all of Brady's right and title to the house and lot and possession by February 15, 1861.

Johnson paid to Walker the first rent, January 22, 1861, and May 18, 1862, paid the rent for 1862.

When Johnson married Miss Goodloe in 1856, he seems to have

had but little, if any, property, her father gave her a house, two cows and household furniture suitable to their condition in life, also a slave woman as cook. Some two years thereafter he broke up housekeeping and sold his wife's furniture, house and one cow and hired out her cook at $75 to $80 per year, he then removed to his father-in-law's and remained there. Shortly before his purchase of the house and lot he had purchased a small stock of groceries, mainly on the credit of his brother-in-law, Barrett, at Louisville.

Mr. Johnson seemed urgent that he should get a house and go to house keeping, and they spoke of the Brady house, when he urged that he could not spare the money out of his business to purchase it, she then told him to use her money derived from the sale of furniture, &c., and hire of her cook. Soon thereafter he made the purchase, but failing to pay Walker, and he threatening to sue, she importuned her father to pay for the house for her. And in the spring of 1864, her father paid Walker $250, and in September, 1865, paid him the remainder, $1,370.97, with the understanding that the house and lot should be conveyed to Caperton as trustee for the separate use of Mrs. Johnson.

Walker was on the eve of starting to some of the Eastern cities when this last payment was made, and therefore did not execute the deed then.

The deed is dated October 24, 1865, and the petition is filed one day before, but the process was not executed until two days thereafter.

Plaintiff seeks to set this deed aside as fraudulent, and to subject the property to the payment of his debt, but if this cannot be done, he seeks then, a sale of the property to pay the advancements made by Mrs. Johnson's father and for the payment of his debt out of the surplus.

The *pro tem* judge to whom it was referred dismissed the petition and appellant seeks a reversal.

Johnson improved the property considerably whilst he was in possession, but Mrs. Johnson's father seems to have contributed largely to this, providing a horse at one time, and lending his own hands to labor, and furnishing materials and beside, she seems by her own meritorious labor, care and taste, to have largely contributed to its improvement, getting strawberries, fruit trees, &c., from her father and neighbors and adorning it with flowers, &c.

It is insisted, however, that before this conveyance the property had risen largely in value and that this increase was his; against this it is urged that when her father first agreed to pay for it, for her use, that the war had not ended, and that its value had not then increased, because of the uncertain condition of the country, and that its increase has mainly been since the establishment of peace and the conveyance. And plaintiff's own conduct seems to fortify this, because he slumbered from 1862 to 1865 without filing any bill to subject this property, though he had had some six or more unavailing executions. And only filed the bill after he had been informed by Walker that Mrs. Johnson's father had paid the money and the property was to be conveyed for her use, and by arrangement between Walker and Rice its execution seems to have been delayed a few days to enable Rice to bring his suit, but though he brought suit before the conveyance was executed he seems to be cognizant of all the facts and understanding, because they are set out in his petition, therefore he had full and actual notice of Mrs. Johnson's equity, whatever it may be.

Looking at the whole case with the facts as presented, we are inclined to the opinion that there is neither actual nor constructive fraud in the conveyance.

Johnson seems to have vacated the stock, furniture and property given to his wife as her separate property, therefore his appropriation of it, by her consent, to the purchase of the house was not fraudulent, he seems to have had nothing from which the creditor could make his debt, previous to the purchase of the house, nor indeed afterwards, as may be inferred from his own conduct. As it was Johnson's duty to provide for his family and make them comfortable, the small contribution made by him in the improvement of the house and lot would not be fraudulent, but, especially, as the purchase money must be paid and the creditor had, or soon would, proceed by suit to subject it.

At the time Mrs. Johnson's father agreed to pay for the house and lot for her benefit, it does not seem to have had such an increase of value as to make the purchase either actually, or constructively, fraudulent, and there is an intrinsic probability that had the house and lot been subjected to the payment of Walker's debt, it would not have sold for more than the debt and costs.

The judgment is affirmed.

*Turner, for appellant.*

*Burnam, for appellees.*